# Commonwealth v. Cincinnati, N. O. & T. P. Ry. Co.

Oct. 24, 1941.

Clifford E. Smith, J. J. Leary and W. H. Jones for appellant.

B. J. Bethurum for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

For the full term of four years immediately prior to the first Monday in January, 1938, Clyde M. Hubble was the elected, qualified and acting sheriff of Pulaski County, Kentucky. James M. Beatty was elected at the regular 1937 election for the full succeeding term of the same office and qualified as such on the first Monday in January, 1938. In this opinion Hubble will be referred to as the "old sheriff," whilst Beatty will be referred to as the "new sheriff." The lines of the appellee and defendant below, Cincinnati, New Orleans & Texas Pacific Railway Company, run through Pulaski county and through some school taxing districts and other subordinate taxing units of government therein. Defendant made report in due time to the State Revenue Department at Frankfort, pursuant to Section 4077 of our present Statutes (Baldwin's 1936 Revision of Carroll's Kentucky Statutes), for the purpose of having it assess the property of defendant subject to ad valorem taxes for the year 1937; but the assessing department did not make or certify to the county court clerk of Pulaski county such assessment, with proper allotments to counties and subordinate taxing units therein, until the early part of March, 1938, immediately upon receipt of which

the certification of taxes due the county and its subordinate governmental agents was turned over by the county court clerk to the old sheriff for collection, the total amount being $40,207.43. He in the meantime had executed bond as collector of taxes in his possession for the last year of his term pursuant to the provisions of Section 4135 of our same Statutes, and which was before the new sheriff had executed his revenue bonds so as to authorize him to collect taxes within his jurisdiction.

Defendant declined to pay the taxes to the old sheriff after receiving such notice from him because of the ambiguous language of Section 4135, supra of our statutes, whereby grave doubt existed as to whether the outgoing or old sheriff had the right to collect any taxes, although qualifying himself to do so, which had not been assessed and certified to him and *in his possession at the time* his term of office expired, and, since the taxes herein had not been so certified to the old sheriff, and the amount thereof was not in his possession at the expiration of his term of office he had no right to make the collection thereof.

Prior to the notification to defendant by the old sheriff of the amount of the taxes, with the request that defendant pay it to him, the office of the Attorney General of the Commonwealth of Kentucky in Frankfort, through Hon. M. B. Hollifield, Assistant Attorney General, on January 31, 1938, wrote a letter to the county court clerk of Muhlenberg County interpreting Section 4135, supra of our Statutes, as not authorizing the outgoing or old sheriff to collect any taxes which had not been assessed or *placed in his hands* for collection *before* the expiration of his term. Therefore, when the old sheriff in this case demanded payment of the taxes from defendant, as certified to him after the expiration of his term of office, it questioned his right to collect the amount demanded from it, and declined to pay, which declination was based upon the opinion of the Attorney General as given to the county court clerk of Muhlenberg county. At that time the new sheriff had not executed his revenue bond and, therefore, he was unauthorized to collect the tax. In the meantime the regular 1938 session of the Legislature had convened at Frankfort and in view of the Attorney General's opinion to the county court clerk of Muhlenberg county it amended Section 4135 by chapter 36, page 1117, of the session

Acts for that year, 1st Ex. Sess., by inserting therein these words: "together with any and all other taxes due upon the levy for the preceding year, whether certified prior or subsequent to his qualification as such collector." All doubt as to the right of the old sheriff to collect the tax, if certified to him before his successor executed his qualified revenue bond, was thereby removed and within the time allowed by law before penalties attached defendants paid the amount of its taxes to the old sheriff exclusive of all penalties.

This action was filed on January 4, 1939, by the State Revenue Commissioner against defendant in the Pulaski circuit court to recover all penalties and interest assessable against defendant for failure to pay its taxes within the statutory period allowed therefor as averred by plaintiff, the total amount of which in the aggregate is the sum of $5,237.68. Besides denying its liability for the penalty defendant pleaded that in declining to pay the taxes to the old sheriff, upon his first certification of the amount it acted in good faith and in the bona fide belief that he was not the proper person to collect the tax, and which act and conclusion was fortified by the Attorney General's opinion supra, to the county court clerk of Muhlenberg county, as well as by the terms of the statute itself and that as soon as the question was settled by the amendment supra of the statute that the old sheriff could collect the taxes in the circumstances, it paid him within the time thereafter to avoid the penalty, and it should not, therefore, be required to pay the penalties sued for when it had never attempted to evade or even postpone the payment of the taxes, but had in good faith only sought to ascertain the person to whom the amount should be paid. The trial court sustained defendant's defense of good faith action in the matter and dismissed the petition, to reverse which plaintiff prosecutes this appeal.

Plaintiff's counsel in seeking a reversal of the judgment cite the texts in 26 R. C. L. 285; Section 342; 37 Cyc. 1544, and 67 C. J. 1490, Section 2139. An examination of them will disclose that the contention made by the tax payer was total non-liability for the alleged taxes on various grounds, such as non-ownership, etc., and no part of any of the text is based on the ground of a bona fide and good faith contention as to the *proper person* to collect the tax which the tax payer acknowl-

edges to be due and payable to the proper collector. On the contrary, this court in the case of Commonwealth for Use of, etc., v. Chesapeake, Ohio & S. W. R. Co., 141 Ky. 633, 133 S. W. 559, 560, said: "Before the collection of a tax can be enforced it must appear (1) that it has been authorized by the Legislature, and as the Constitution requires the purpose to be stated in the enactment levying the tax, that must be complied with; (2) there must appear an assessment of the property by the magistracy created by law; (3) there must be a time when and *a person to whom the payment can be legally made.*" (Our emphasis.)

Likewise, in the case of Cincinnati N. O. & T. P. Ry. Co. v. Commonwealth, 253 Ky. 24, 68 S. W. (2d) 774, 776, in declaring when a tax payer might decline to make payment, we said: "It [corporate tax payer] was not required to pay the taxes and then be put to a suit or compelled to resort to other authority to recover of the taxing units the illegal part, if it was illegal, or if it in *good faith believed it to be so.*" It would be no difficult task— but only lengthen this opinion—to insert cases and texts approving what may be termed as the "good faith" rule as applicable to tax payers in avoidance of attached penalties for non-payment of taxes when due and properly demanded. What we have cited, however, is sufficient to show that the rule prevails in this jurisdiction, which leaves for consideration the only other question as to whether or not the facts as hereinbefore recited and which are undisputed were sufficient to justify defendant's non-payment of the taxes when first demanded of it by the old sheriff while acting in the good faith belief that he was without authority to make the collection?

We have no hesitancy in answering that question in the affirmative. Not only was Section 4135 before the 1938 amendment which took effect in April of that year extremely ambiguous, but the highest state legal consultant (the Attorney General) had construed it as not vesting the old sheriff with the authority to collect the tax here involved at the time he demanded payment by defendant. There could scarcely be a stronger situation for the foundation of good faith action on the part of the tax payer in declining to make payment to the demanding collector than the one made out by the facts of this record. If payment had been made at the time the old sheriff first made his demand of defendant it may

have been subjected to future litigation and, possible repayment if the opinion of the Attorney General had been approved as the correct interpretation of the statutory provisions. It was not called upon to take that risk but had the right to withhold payment until it should be legally determined as to who was the proper collector. The law in such situations does not exact or demand of the taxpayer the pound of flesh but recognizes good faith conduct and bona fide action as relief against any such demand.

But it is argued, that in a later case, in a litigation between the old and the new sheriff, we, in the case of Walker v. Commonwealth, 279 Ky. 198, 130 S. W. (2d) 27, 29, construed Section 4135, as framed before it was amended in 1938, as authorizing the old sheriff to collect all taxes due for the last year of his term, whether they were or not certified to him at the time of the expiration of his term, and which was a contrary conclusion to the one supra, emanating from the Attorney General's office. We therein interpreted the language of the section before the amendment to be as comprehensive as it was after the amendment. However, that opinion and interpretation was made on June 16, 1939, nearly a year and six months after the old sheriff retired from office and the new one succeeded him. Our opinion in that (Walker) case acknowledged the ambiguity of the statute before the 1938 amendment, and that the question for decision was on the border line and for which reason we said: "It must be admitted, however, that the language of the section before the amendment is somewhat clouded." But to remove that cloud we looked to what we conceived to be the purpose of the legislature in the enactment of the section, which we concluded was to compensate the outgoing sheriff for loss of compensation for having postponed the due date for the payment of the taxes to a time beyond the expiration of his term. Also, that the legislature, no doubt, had in mind the maxim of the law to the effect that it "regards that as done which ought to have been done," and, since the state assessing department should have assessed the property and reported its amount to the county court clerk before the first Monday in the following January, it should be treated as if that had been done. Evidently the question for determination in that case was one that might have been decided either

way, with at least a modicum of plausibility supporting the opinion. In such circumstances the layman should not be required to determine the correct interpretation at his peril, but may in good faith act upon reasonable appearances, and especially so, as was done by defendant in this case, by following the interpretation given by the highest consulting legal authority within the commonwealth.

In the same (Walker) opinion, in referring to the question of the tax payer's liability for penalties, we said: "Another question argued in brief, is whether or not the court erred in relieving the Railway Company of the payment of penalties and extra interest? It is quite probable that in the circumstances the court was justified in arriving at that conclusion; but, whether so or not, the question is not presented on this appeal for our determination." It is therein clearly inferable that if the question had been properly submitted to us we would have held that the taxpayer was not liable for penalties in the same circumstances as is presented by this record. We conclude that the law, as declared by the authorities herein cited, does not require as an element of good faith action, that the taxpayer's contention must finally be upheld and that his excuse will be denied if it should be eventually determined that his doubts were unfounded. If, however, his insistence is so frivolous, fallacious and unreasonable as to be arbitrary and to clearly show conduct not prompted by good faith belief it will be ineffective and of no avail. Upon the whole case we are driven to the conclusion that in the circumstances adduced the court correctly held that defendant was not liable for any of the items sued for, and properly dismissed the petition.

Wherefore, the judgment is affirmed.